**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELLIOT GRODKO,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Civ. No. 17-3743** |
| | : | |
| **TEVA PHARMACEUTICAL** | : | |
| **INDUSTRIES LTD., et al.,** | : | |
| Defendants. | : | |
| **BARRY BAKER,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Civ. No. 17-3902** |
| | : | |
| **TEVA PHARMACEUTICAL** | : | |
| **INDUSTRIES LTD., et al.,** | : | |
| Defendants. | : | |

**ORDER**

These are the fifth and sixth Private Securities Litigation Reform Act suits filed across the country against Teva Pharmaceutical Industries Ltd., Erez Vigodman (former Teva President and CEO), Eyal Desheh (former Teva CFO), and Yitzhak Peterburg (interim President and CEO and former Chairman of the Board), alleging that Defendants misled investors about Teva's financial condition. (Compl., Civ. No. 17-3743, Doc. No. 1; Compl. Civ. No. 17-3902, Doc. No. 1.) Defendants have moved to transfer this case to the District of Connecticut under either the first-filed rule or 28 U.S.C. § 1404(a). (Defs.' Mot. Transfer, Doc. No. 24, Civ. No. 17-3743.) Because transfer is appropriate on both grounds, I will grant Defendants' Motion.

I. **PROCEDURAL HISTORY**

A. **The Earlier-Filed Complaints and the Consolidated Action**

Between November 6, 2016 and August 3, 2017, three private securities class actions were filed against Teva and its officers and employees. (Defs.' Mot. Transfer 3–6, Doc. No. 24.)

See Compl., Galmi v. Teva Pharm. Indus. Ltd., No. 16-cv-08259, Doc. No. 1 (C.D. Cal., Nov. 6, 2016); Compl., Leone v. Teva Pharm. Indus. Ltd., No. 16-cv-09545, Doc. No. 1 (C.D. Cal. Dec. 27, 2016); Compl., OZ ELS Master Fund. Ltd. v. Teva Pharm. Indus. Ltd., No. 17-cv-558, Doc. No. 1 (D. Conn. Aug. 3, 2017). In addition, a derivative action was brought against Teva and officer defendants, alternatively alleging class action claims. Compl., Hullemeir v. Teva Parm. Indus. Ltd., No. 17-cv-485, Doc. No. 1 (S.D. Ohio July 17, 2017);

On April 3, 2017, Judge Terry J. Hatter Jr. of the United States District Court for the Central District of California consolidated *Galmi* and *Leone*: both matters included claims under §§ 10(b) and 20(a) of the Federal Securities Exchange Act, and stemmed from Defendants' allegedly misleading public statements respecting price-fixing in the pharmaceutical industry. Order, Galmi, Doc. No. 74 (C.D. Cal. Apr. 3, 2017). Judge Hatter then transferred the consolidated matter to the District of Connecticut, where a civil antitrust case brought by various states against Teva and other generic-drug companies was pending. Id. Judge Stefan R. Underhill appointed the Ontario Teachers' Pension Plan Board as lead plaintiff in the Connecticut consolidated action and the Board filed an amended complaint. Order, Ontario Teachers' Pension Plan Board, et al v. Teva Pharm. Indus. Ltd., No. 17-cv-558, Doc. No. 124 (D. Conn. July 11, 2017); Am. Compl., Ontario Teachers' Pension Plan Board, Doc. No. 141 (D. Conn. Sept. 11, 2017).

Similarly, on November 17, 2017 Judge Susan J. Dlott of the United States District Court for the Southern District of Ohio transferred *Hullemeir* to the District of Connecticut under the first-filed rule because of substantial overlap with the *Ontario Teachers'* consolidated action. Order, Hullemeier, Doc. No. 17 (S.D. Ohio Nov. 17, 2017) (overlap in defendants, allegations regarding misrepresentations and price-fixing, and proposed class favored transfer). Judge

Underhill stayed both this action and the *OZ ELS* matter pending resolution of motions to dismiss filed in *Ontario Teachers'*.  Order, Huellemeier, Doc. No. 37 (D. Conn. Feb. 12, 2018); Minute Entry, OZ ELS, Doc. No. 19 (D. Conn. Aug. 30, 2017).

### B. The Instant Complaint

On August 21, 2017, Elliot Grodko filed a securities class action in this Court against Defendants.  (Compl., Doc. No. 1, Civ. No. 17-3743.)  On August 30, 2017, Barry Baker filed an almost identical action, without asserting a claim under Israeli Securities Law.  (Compl., Doc. No. 1, Civ. No. 17-3902.)  Although Grodko published notice of his action—pursuant to 15 U.S.C. §78u-4(a)(3)(A)—alerting potential class members to the pending securities action, he filed his notice of voluntarily dismissal on October 23, 2017.  (Notice of Voluntary Dismissal, Doc. No. 11, Civ. No. 17-3743; see also Koch Decl. Ex. C, Doc. No. 15-4, Civ. No. 17-3743.)  Despite Grodko's voluntary dismissal of his Complaint, within the same day putative class members responded to the published notice, filing motions for appointment as lead plaintiff on both the *Grodko* and *Baker* dockets.

*Grodko* and *Baker* included substantially the same claims under 15 U.S.C. § 78u-4 and multiple movants had sought to consolidate the actions.  (Doc. Nos. 12, 14, 15, Civ. No. 17-3743); U.S.C. § 78u-4 (a)(3)(B)(ii).  On November 1, 2017, Chief Judge Stengel consolidated both actions before me.  (Doc. No. 16, Civ. No. 17-3743.)

Although seven motions for appointment as lead plaintiff were initially filed, one movant withdrew, one did not file a response in further support of the motion, and four movants filed responses indicating their non-opposition to the appointment of Yael Amsellem.  (Doc. Nos. 12, 13, 14, 15, 17, 18, Civ No. 17-3743; Doc. Nos. 2, 3, 5, 9, 10, Civ. No. 17-3902.)  Mason Slaine

3

and Yael Amsellem initially submitted competing motions, each arguing that the most adequate plaintiff presumption favored his individual appointment as Lead Plaintiff; they later submitted a joint Stipulation seeking to serve as Co-Lead Plaintiffs. (Compare Doc. Nos. 2, 11–15, Civ. No. 17-3902 and Doc. Nos. 15, 19, 20, 29, 31, Civ. No. 17-3743 with Doc. No. 33, Civ. No. 17-3743.) I have not yet ruled on these Motions.

Defendants have moved for transfer of the instant consolidated action to the District of Connecticut pursuant to the first-filed rule or under 28 U.S.C. § 1404(a). (Defs.' Mot. Transfer, Doc. No. 24, Civ. No. 17-3743.) The matter has been fully briefed. (Doc. Nos. 26, 27, 31, 35.)

## II.   LEGAL STANDARDS

### A.   The First-Filed Rule

As explained by the Third Circuit:

> The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives courts 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.

E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988); accord Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." (quoting Smith v. McIver, 22 U.S. 532, 535 (1824))). The rule "permits courts to consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case." Palagano v. NVIDIA Corp., No. 15-1248, 2015 WL 5025469, at *1 (E.D. Pa. Aug. 19, 2015); see also Chavez v. Dole Food Co., Inc., 836 F.3d 205, 217 & n.48 (3d Cir. 2016) (en banc) (citing 15 Charles Alan Wright et al., Fed. Prac. & Proc. § 3854 & n.12 at 339-43 (4th ed. 2013)).

Although courts differ with respect to the degree of similarity required, a "flexible

approach . . . more fully meet[s] the purposes of the first-filed rule." Law Sch. Admission Council, Inc. v. Tatro, 153 F. Supp. 3d 714, 724 (E.D. Pa. 2015); see also Chavez, 836 F.3d at 216 ("[T]he first-filed rule is 'grounded on equitable principles' and requires district court judges to 'fashion[] a flexible response to the issue of concurrent jurisdiction.'" (second alteration in original) (footnotes omitted) (quoting E.E.O.C., 850 F.2d at 977)).  Accordingly, in adopting this "more flexible approach," courts in this Circuit have repeatedly held that "the rule applies to cases that are substantially similar."  Palagano, 2015 WL 5025469, at *2 (collecting cases). With this greater flexibility, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align.  Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one."  Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009).  The "substantive touchstone of the first-to-file inquiry is subject matter."  Id. (quoting Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)).

"[R]are or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping" are proper bases upon which a court may retain jurisdiction of a later-filed action. E.E.O.C., 850 F.2d at 976.

### B. Transfer

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

Congress enacted § 1404(a) "to prevent the waste 'of time, energy, and money' and 'to

protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26–27 (1960)). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Although "there is no definitive formula or list of . . . factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).

> The *Jumara* Court set out private and public interests that I may consider:
>
> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive*;* the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-880 (citations omitted).

### III. DISCUSSION

Defendants seek transfer to the District of Connecticut under the first-filed rule or § 1404(a). (Defs.' Mot. Transfer, Doc. No. 24.) Amsellem and Slaine respond that the first-filed rule does not apply, nor is transfer appropriate under § 1404(a). (Amsellem's Mem. in Opp'n to Defs.' Mot. Transfer, Doc. No. 26; Slaine's Mem. in Opp'n to Defs.' Mot. Transfer, Doc. No. 31.)

6

### A. The First-Filed Rule

*Identifying the First-Filed Case*

Amsellem and Slaine argue that even if the first-filed rule applies to PSLRA actions, *Grodko* and *Baker* are not later-filed actions because the *Ontario Teachers'* Amended Complaint was not filed until September 11, 2017. (Amsellem Mem. in Opp'n to Defs.' Mot. Transfer 5–11, Doc. No. 26; Slaine Mem. in Opp'n to Defs.' Mot. Transfer 1, Doc. No 31.)  I do not agree.

The determinative date under the first-filed rule is when the case is filed, not when any amended complaint is subsequently filed.  Catanese v. Unilever, 774 F. Supp. 2d 684, 688 (D.N.J. 2011); see also Crosley Corp. v. Westinghouse Electric & Mfg. Co., 130 F.2d 474, 475 (3d Cir. 1942) (citing Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 230 (3d Cir. 1941)) (determinative date is when courts took jurisdiction of the suit, given the policies behind the first-filed rule: (1) public interest in avoiding economic waste of duplicitous litigation and waste of judicial time and energy; and (2) prompt and efficient administration of justice.)

Furthermore, a party "cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier-filed action," as Amsellem and Slaine do here, arguing they were not included in the proposed class until after the filing of the *Ontario Teachers'* Amended Complaint.  Advanta Corp. v. Visa U.S.A., Inc., No. 96-7940, 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997).  This expansion of the class with the filing of the *Ontario Teachers'* Amended Complaint did not change the first filing date, especially when Defendants concede that they were not prejudiced by such amendment. (Defs.' Reply 8, Doc. No. 27 ("the original *Galmi* complaint . . . *did* raise issues similar to those later raised here in *Grodko* and *Baker* complaints," including similar types of securities claims, and allegations related to Teva's

7

acquisition of Actavis)); see also Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc., Civ. No. 97-3105, 1997 WL 700496 (E.D. Pa. Oct. 29, 1997) (citing Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995)).

Accordingly, the *Ontario Teachers'* consolidated action is the first-filed case. Compare Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd., No. 17-cv-00558 (D. Conn.) with (Compl., Grodko v. Teva Pharm. Indus. Ltd., Civ. No. 17-3743, Doc. No. 1 (E.D. Pa Aug. 21, 2017.)) and (Compl., Baker v. Teva Pharm. Indus. Ltd., Civ. No. 17-3902, Doc. No. 1 (E.D. Pa. Aug. 30, 2017)).

### *Similarity with the Connecticut Consolidated Action*

Substantial overlap in subject matter between two actions steers determinations under the first-filed rule. E.E.O.C. v. University of Pennsylvania, 850 F.2d at 971 (3d Cir. 1988) ("the court which first has possession of the *subject* must decide it."); see also Ivy-Dry, Inc. v. Zanfel Laboratories, Inc., No. 08-4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) ("[A] plain reading of the Third Circuit's opinion in *EEOC* strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties.). The presence of common claims, allegations, and misrepresentation materials in the consolidated action in this District and the Connecticut action underscores shared subject matter. Indeed, Mr. Grodko based his decision voluntarily to dismiss his Complaint on the expansion of *Ontario Teachers'* to encompass claims in the *Grodko* Complaint. (Not. Voluntary Dismissal, Grodko, Doc. No. 11.)

*Ontario Teachers'* is based on "material misstatements and omissions about Teva's U.S. generic drugs business, its financial performance, and in particular its participation in an anticompetitive collusive scheme to manipulate the market for generic drugs," which damaged

investors once the inflated price of Teva securities fell. Am. Compl. ¶ 4, Ontario Teachers' Pension Plan Board, No. 17-cv-558, Doc. No. 141 (Sept. 11, 2017). *Grodko* and *Baker* are based predominantly on alleged misrepresentations related to Teva's acquisition and integration of Actavis Generics. (Compl., Doc. No. 1, Civ. No. 17-3743; Compl., Doc. No. 1, Civ. No. 17-3902.)

Although the Connecticut action is broader than *Groko* and *Baker*, it encompasses the class members, defendants, and allegations present in *those matters*. In *Ontario Teachers'*, the Board seeks to represent the class of persons and entities who acquired Teva American Depositary or common stock between February 6, 2014 and August 3, 2017, a time frame inclusive of the proposed class in this consolidated action. Compare Am. Compl. ¶ 28, Ontario Teachers' Pension Plan Board, Doc. No. 141 with (Compl.¶ 1, Grodko, Doc. No. 1) and (Compl. ¶ 1, Baker, Doc. No. 1); see also Catanese v. Unilever, 774 F. Supp. 2d 684 ("[I]n a class action, the classes and not the class representatives are compared" for the purposes of first-filed rule analysis). All the Defendants in *Grodko* and *Baker* are defendants in *Ontario Teachers*' consolidated action. Compare (Compl. ¶¶ 10–14, Grodko, Doc. No. 1) and (Compl. ¶¶ 10–14, Baker, Doc. No. 1) with Am. Compl. ¶¶ 68, 70, 71, 75, Ontario Teachers' Pension Plan Board, Doc. No. 141.

The *Ontario Teachers'* lead plaintiff brings: (1) a claim under § 10(b) of the Exchange Act and Rule 10b-5; (2) a claim under § 20(a) of the Exchange Act; (3) two claims under § 11 of the Securities Act; (4) two claims under § 12(a)(2) of the Securities Act; (5) two claims under § 15 of the Securities Act; and (6) a claim under the Israel Securities Law of 1968. Am. Compl.¶¶ 1–4, 867–882, 1013–1075, 1076–1085, Ontario Teachers' Pension Plan Board, Doc. No. 141. The prospective plaintiffs in both *Grodko* and *Baker* also bring a claim under § 10(b) of the

Exchange Act and Rule 10b-5 and a claim under §20(a). *Grodko* includes a claim under the Israel Securities Law. (Compl. ¶¶44–63, Grodko, Doc. No. 1; Compl. ¶¶ 46–61, Baker, Doc. No. 1.)

Moreover, the lead plaintiff in *Ontario Teachers'* alleges specific misrepresentations respecting: (1) Teva's product pipeline; (2) expected synergies; (3) a stronger and more competitive Teva; and (4) the 6.1 billion dollar goodwill charge tied to the acquisition. Compare Am. Compl. ¶¶ 511 – 515, 519, 687–690, 694, 705, Ontario Teachers' Pension Plan Board, Doc. No. 141 with (Compl. ¶ 16, Grodko, Doc. No. 1) and (Compl. ¶¶ 16, 20, Baker, Doc. No. 1). The *Ontario Teachers'* complaint includes cites to the same conference calls, quarterly Form 6-K's and press releases, and annual Form 20-F's mentioned in the *Grodko* and *Baker* complaints. Compare Am. Compl. ¶¶ 687–99, 703–11, 716–724, Ontario Teachers' Pension Plan Board, Doc. No. 141 with (Compl. ¶¶ 15–18, 20–26, Grodko, Doc. No. 1) and (Compl. ¶¶ 15–18, 20–26, Baker, Doc. No. 1).

Given this substantial overlap in subject-matter, transfer under the first-filed rule would prevent inconsistent rulings and duplication of judicial effort. See Catanese, 774 F. Supp. 2d at 688; see also E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988).

### *Applicability of First-Filed Rule to PSLRA*

Amsellem and Slaine argue that the first-filed rule is not applicable to PSLRA class actions: PSLRA's "lead plaintiff appointment process obviates the need for any first-filed doctrine analyses," as it already "safeguards against duplicitous [sic] litigation." (Amsellem's Mem. in Opp'n to Defs.' Mot. Transfer 4–5, Doc. No. 26; Slaine's Mem. in Opp'n to Defs.' Mot. Transfer 1, Doc. No. 31.) I disagree.

Amsellem and Slaine provide no authority to support this dubious exception to the first-filed rule. Moreover, they ignore the Act's provisions allowing district courts and parties to deviate from the lead plaintiff appointment process and notice obligations when consolidation is likely. 15 U.S.C. § 78 u-4 (a)(3)(A)(ii–iii), (B)(ii). Congress thus did not intend the PSLRA to supplant all mechanisms at district courts' disposal to prevent duplicative litigation. See also In re Cendant Corp., 260 F.3d 183, 197 (3d Cir. 2001) (quoting S. Rep. 104-98 at 4 (1995)) (purposes of the PSLRA include "empower[ing] investors so that they—not their lawyers—exercise primary control over private litigation," and "encourag[ing] plaintiffs' lawyers to pursue valid claims and defendants to fight abusive claims"); id. ("Congress' clear intent in enacting the PSLRA was to transfer control of securities class actions from the attorneys to the class members"). This is undoubtedly why courts have regularly applied the first-filed rule in PSLRA actions, as most recently seen in *Hullemeir*. E.g. Order, Hullemeir v. Teva Parm. Indus. Ltd., No. 17-cv-485, Doc. No. 17 (S.D. Ohio July 17, 2017); Tran v. Third Ave. Mgt. LLC, No. 16-602, 2016 WL 6828217, at *5–6 (C.D. Cal. April 21, 2016); Reisman v. Van Wagoner Funds, Inc., No. 02-012, 2002 WL 1459384, at *1–3 (D. Del. June 7, 2002).

### *Rare or Extraordinary Circumstances*

Finally, no circumstances suggest that I should refrain from applying the first-filed rule. Forum shopping is not a concern: Defendants filed none of the actions at issue here. (Defs.' Mot. Transfer 17–18, Doc. No. 24); see also E.E.O.C, 850 F.2d at 978 (the forum shopping exception applies only when a plaintiff shows that a defendant in the second action filed the first action to avoid the second forum); FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 745 (E.D. Pa. 2005). Amsellem and Slaine concede that this suit has not progressed beyond the stage reached in *Ontario Teachers'*, nor has there been any showing of bad faith. (Amsellem

11

Mem. in Opp'n to Defs.' Mot. Transfer 9 n.6, Doc. No. 26; Slaine Mem. in Opp'n to Mot. Transfer 2, Doc. No 31); see also E.E.O.C, 850 F.2d at 976.

In sum, transfer is proper under the first-filed rule.

### B. Transfer

In the alternative, I conclude that the *Jumara* factors weigh strongly in favor of transfer.

### *The Parties' Forum Preferences*

Yael Amsellem argues that "paramount consideration" should be given to a Plaintiff's choice of venue. (Amsellem Mem. in Opp'n to Defs.' Mot. Transfer 12, Doc. No. 26); see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). The plaintiff's choice of forum is not dispositive, however. (Amsellem Mem in Opp'n to Defs.' Mot. Transfer 12); see also Samuels v. Medytox Sols., Inc., 2014 WL 4441943, at *8 (D.N.J. Sept. 8, 2014).

First, Plaintiff's "choice of forum becomes substantially less important. . . when he sues representatively on behalf of a class" (as is the case here). Yang v. Odom, 409 F. Supp. 2d 599, 606 (D.N.J. 2006) (quoting Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 228 (D.N.J. 1996)). Moreover, "the existence of a related action in another district is a sound reason for favoring transfer when the venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." Villari Brandes & Kline, P.C. v. Plainfield Speciality Holings II, Inc., No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009). Although Defendants may have initially advocated for transfer of *Galmi* and *Leone* to this District, the situation has changed, given the progression of the consolidated action in the District of Connecticut. Compare Order, Galmi v. Teva Pharm. Indus. Ltd., No. 16-cv-08259, Doc. No. 74 (C.D. Cal. Apr. 3, 2017) with (Defs.' Mot. Transfer 18, Doc. No. 24) and (Defs.' Reply 10, Doc. No. 27.)

Defendants' preference to litigate substantially similar claims in the same district is thus entirely reasonable.

In sum, the venue of the consolidated *Ontario Teachers'* action and the stayed *Hullemeier* and *OZ ELS* actions favors transfer to the District of Connecticut.

### *Whether the Claims Arose Elsewhere*

This factor does not favor transfer: the consolidated action "arises from strategic policy decisions of a defendant corporation." Palagano v. NVIDIA Corporation, No. 15-1248, 2015 WL 5025469 at *5 (E.D. Pa. Aug. 25, 2015). In such a circumstance, "the defendant's headquarters can be considered the place where events giving rise to the claim occurred." Id. Here, Teva's North American subsidiary headquarters are in this District. (See Defs.' Mot. to Transfer 4, Doc. No. 24; Defs.' Reply 10 n.9, Doc. No. 27.)

### *The Parties' Convenience*

Amsellem and Slaine have not explained why litigation would be more convenient to them in this District. Rather, the record suggests strongly that transfer would promote convenience. As Amsellem acknowledges, Defendants' will necessarily assume the vast bulk of the discovery burden. (Amsellem Mem. of Law in Opp'n to Mot. Transfer 14, Doc. No. 26); see also In re Glob. Cash Access Holdings Inc. Sec. Litig., No. 08-3516, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) (key witnesses in securities class actions are often officers and employees of issuer defendants); Blass v. Capital Int'l Sec. Grp., No. 99-5738, 2001 WL 301137, at *6 (E.D.N.Y. March 23, 2001) ("Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession."); In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 402 (S.D.N.Y.

1998) ("It is well known that trials in securities class actions focus almost entirely on the defendants' conduct."). The burden on individual class members would thus be comparatively light. Given Defendants' discovery burden, however, litigating "identical actions" in two different districts "would inevitably include duplication of a large amount of discovery and documentary evidence." Catanese v. Unilever, 744 F. Supp. 2d 684 (D.N.J. 2011).

In sum, this factor favors transfer.

### *The Convenience of the Witnesses*

Neither Defendants nor Amsellem and Slaine argue that any witnesses "may actually be unavailable for trial in one of the fora." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). This factor is thus neutral.

### *The Location of the Books and Records*

Yael Ansellem argues that because Teva's North America headquarters are in this District, many discoverable documents and records are also here. (Mem. of Law in Opp'n to Mot. Transfer 14, Doc No. 26.) Yet, Defendants have not indicated that discovery materials would be less available if the matter were transferred. Plainly, given the ubiquity of electronically stored documents, this factor is neutral. See Panitch v. Quaker Oats Co., No. 16-4586, 2017 U.S. Dist. LEXIS 51737 (E.D. Pa. Apr. 5, 2017) ("the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." (quoting Lomanno v. Black, 285 F. Supp. 2d 637, 646 (E.D. Pa. 2003)).

### *Public Interest*

Avoiding duplicative litigation furthers judicial and lawyer efficiency, as well as consistency of results. "To permit a situation in which two cases involving precisely the same

14

issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960); see also Goggins v. Alliance Capital Management, L.P., 279 F. Supp. 2d 228, 234–235 (S.D.N.Y. 2003).

\* \* \*

In sum, Defendants have shown that the private and public *Jumara* factors weigh in favor of transfer under §1404(a).

### C. Pending Lead Plaintiff Motions

In light of my decision to transfer, I will refrain from adopting the Stipulation and Proposed Order regarding Appointment of a Lead Plaintiff, or otherwise ruling on the remaining pending Motions. (Doc. Nos. 12, 13, 14, 15, 33, Civ. No. 17-3743; Doc. Nos. 2, 4, 5, 6, Civ. No. 17-3902.) The PSLRA cautions against appointment of a lead plaintiff when consolidation is possible. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Moreover, my appointment of a lead plaintiff would interfere with Judge Underhill's management of the Connecticut action.

### IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' Motion and transfer this matter to the District of Connecticut under the first-filed rule; in the alternative, I will order transfer under 28 U.S.C. §1404(a).

**AND NOW**, this 10th day of April, 2018, upon consideration of Defendants' Motion to Transfer (Doc. No. 24), Yael Amsellem's Memorandum of Law in Opposition to Defendants' Motion to Transfer (Doc. No. 26), Defendants' Reply Memorandum (Doc. No. 27), Mason Slaine's Memorandum of Law in Opposition to Defendants' Motion to Transfer (Doc. No. 31),

Amsellem's and Slaine's Stipulation (Doc. No. 33), Defendants' Memorandum in Reply to Slaine's Supplemental Opposition (Doc. No. 35), and all related submissions, it is hereby **ORDERED** that the Motion (Doc. No. 24) is **GRANTED**.  The **CLERK OF COURT** shall **TRANSFER** this consolidated case (17-cv-3743 and 17-cv-3902) to the United States District Court of Connecticut, and shall **CLOSE** this case.

                     **AND IT IS SO ORDERED.**

 *4/10/18*                  */s/ Paul S. Diamond*

                       _____

                       Paul S. Diamond, J.